# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE RESTRAINT OF REAL PROPERTY
OWNED OR CONTROLLED BY
AQUIL SHABBIR AHMED

)
)
)
)
)
)

Case: 1:16-mc-01230
Assigned To : Cooper, Christopher R.
Assign. Date : 6/13/2016
Description: Miscellaneous

## UNITED STATES' EX PARTE APPLICATION
## TO REGISTER AND ENFORCE A FOREIGN RESTRAINING ORDER
## PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys,

respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3)

and 18 U.S.C. § 983(j). This application seeks enforcement of a foreign restraining order issued

by the Maidstone Crown Court in Kent, England, in order to preserve the availability of U.S.

assets that are subject to forfeiture in the United Kingdom. The assets will be restrained pending

the presentation of a final U.K. confiscation (forfeiture) order to the United States' central

authority for execution pursuant to the relevant bilateral treaty.

On November 12, 2014, the Department of Justice's Office of International Affairs

referred a mutual legal assistance ("MLA") request from the United Kingdom to the Asset

Forfeiture and Money Laundering Section ("AFMLS") of the United States Department of

Justice. The request seeks the enforcement of a restraining order (hereinafter, the "U.K.

Restraining Order" or "Restraint") issued on August 8, 2013, by Judge Charles MacDonald QC

of the Maidstone Crown Court, against real property and one account located in the United States

as well as real and personal property in the United Kingdom, Belize, Turkey, and Gibralter. The

real properties in the United States are the following:

1

a. 4728 Windwood Drive, Kissimmee, Florida;
b. 16931 Sunrise Vista Drive, Clermont, Florida;
c. 806 Golf Course Parkway, Davenport, Florida; and
d. Hilton Grand Vacation Club, Parc Soleil Resort, Florida;

*See* Exhibit 1, U.K. Restraining Order, p. 8.[1]  Three of the four properties are held solely in the name of Defendant Aquil Ahmed with the fourth—4728 Windwood Drive—held jointly by Ahmed and his wife, Nadra.  With respect to the Hilton Grand Vacation Club property, Ahmed's interest is limited to a $10,000.00 interest in a time-share property (the equivalent of one vacation week).  The properties have been valued at approximately $510,000.  Further, two of the properties—4728 Windwood Drive and 16931 Sunrise Vista Drive—are secured with mortgages totaling approximately USD 402,600.

The U.K. Restraining Order has been certified for enforcement by the Assistant Attorney General ("AAG") of the U.S. Department of Justice's Criminal Division in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii).  *See* Exhibit 2, AAG Certification and U.K. R.O.  This application seeks to restrain a combined total of approximately $510,000 in the four above-referenced real properties.

Should this Court issue the attached Proposed Order, this U.S. restraint will preserve the assets for confiscation pending the conclusion of criminal and confiscation proceedings in the United Kingdom.

## I.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467.

---

[1] United Kingdom authorities have advised that they are not seeking restraint of the United States financial account at this time.

Venue is proper in this Court pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II.

## FACTUAL BACKGROUND

United Kingdom Crown Prosecution Service ("CPS") authorities allege that on November 16, 2011, U.K. authorities began investigations into theft of public revenue and money laundering. As part of their investigation, on May 16, 2012, Aquil Shabbir Ahmed ("Ahmed") and a co-conspirator, Chris Azzarpardi, were arrested on suspicion of tax fraud and money laundering.[2] Ahmed and his co-conspirators operated a fraudulent payroll/labor provider scheme and evaded the payment of British taxes in the approximate amount of USD 6 million. They did this by stealing the Value Added Tax ("VAT") numbers of lawfully registered companies who used their business for payroll management services. VAT is charged on goods and services within E.U. countries. U.K. businesses that are registered for VAT must pay "input" VAT on goods and services they buy, and charge "output" VAT on the goods and services they sell. The value of output VAT, minus input VAT, should be declared by private businesses as VAT liability and paid to HMRC quarterly.

Ahmed and his co-conspirators collected VAT and other tax payments from legitimate businesses using their payroll services, and failed to transfer those payments to the appropriate U.K. revenue authorities, instead stealing those funds and transferring the same into numerous accounts they controlled. Ahmed and his co-conspirators carried out their fraud by establishing

---

[2] A third co-conspirator David Michael Hughes ("Hughes") absconded and fled to Dubai. Hughes has yet to be arrested.

3

companies, bank accounts and email addresses with names similar to their legitimate clients whose identities they stole as part of their scheme. For example, Continental Trade Services Limited is a lawfully VAT registered company. Ahmed and his co-conspirators created false documents and a bank account in the name of Continental Trade *Personnel* Limited using the VAT registration number assigned to Continental Trade Services Limited. The fraudulently established companies were then used to invoice the various businesses for whom Ahmed and Hughes were purportedly providing payroll services. The invoices sent by Ahmed and others provided payment instructions that resulted in payments to companies not registered with U.K. taxation and customs authorities and the deposit of funds into the unregistered companies' accounts.

Rather than remitting client funds due to U.K. revenue authorities, Ahmed and others diverted those funds to other accounts they controlled, and purchased real estate and other luxury items in the U.K. Ahmed and his co-conspirators also transferred stolen funds to accounts they controlled in Gibraltar, Belize, the United States and the UAE and purchased real property and luxury items in other jurisdictions.

U.K. authorities arrested Ahmed and other co-conspirators on May 16, 2012. They also executed search warrants at Ahmed's home and business addresses. On August 8, 2013, Judge Charles MacDonald QC of the Maidstone Crown Court issued the Restraining Order against Ahmed and others which prohibits Ahmed, his wife, or anyone acting on his behalf from dealing with his "realizable property" listed in the order so that those assets may be preserved for confiscation if he is convicted.

4

## III.

## LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to

preserve property during the pendency of foreign forfeiture proceedings until receipt of an

enforceable, final foreign forfeiture or confiscation judgment.  *See* Preserving Foreign Criminal

Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28

U.S.C. § 2467(d)(3)).  Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture
> under foreign law, the Government may apply for and the court may issue a
> restraining order at any time before or after the initiation of forfeiture proceedings
> by a foreign nation.

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with

subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process

protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A).

Consequently, the district court may deny enforcement of a foreign restraining order if it finds

that the order was obtained without due process, was issued by a foreign court that lacked subject

matter jurisdiction, or was obtained by fraud.  The statute's cross-references to § 983(j) do not

require that criminal or civil forfeiture proceedings be filed in the United States to enforce a

foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings

initiated abroad should comport with U.S. notions of due process.  *See* 28 U.S.C.

§ 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013)

(holding that the filing of a foreign civil forfeiture complaint is not required, but that

"applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely

pending final forfeiture, should entail "procedural due process protections consistent with those

that the filing of an American civil forfeiture complaint" would have afforded).  In line with

analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C.

§ 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of

foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or her authorized designee that enforcement of

the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a

foreign order.  *See* 28 U.S.C. § 2467(b)(2).  On May 9, 2006, the Attorney General delegated

authority for the certification of orders under this provision to the Assistant Attorney General for

the Criminal Division.  The AAG's determination is not subject to judicial review.  *See* 28

U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## IV.

## DISCUSSION

### A.   The U.K. Restraining Order Meets the Criteria for Enforcement Under § 2467(d)(3)(A).

Section 2467 sets forth the following criteria that are relevant in considering a request for

enforcement of a foreign restraining order: (1) whether the United States and the foreign nation

seeking enforcement of the order are parties to a formal, international agreement providing for

mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it

would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether

the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the

foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is

any reason to believe the foreign order was obtained by fraud, *id.*[3]  The U.K. Restraining Order

---

[3] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin.*

meets the above criteria for registration and enforcement pursuant to § 2467 and, therefore, entry

of a U.S. restraining order is both necessary and appropriate to preserve the property for eventual

confiscation should Ahmed be convicted.  This Court has previously enforced numerous U.K.

restraints and final orders.[4]

1.    Agreement on Forfeiture Assistance

First, the United States and United Kingdom are parties to a Mutual Legal Assistance

Treaty that entered into force on December 2, 1996.[5]  Under article 16 of that Treaty, the United

States is obligated to assist the United Kingdom in forfeiture matters, including the freezing and

seizing of suspected criminal proceeds, such that the first criterion is satisfied.

2.    Attorney General Certification

Second, the United Kingdom Restraining Order was certified by the Assistant Attorney

General on May 6, 2016.  The AAG, in certifying the order, acknowledged that she has

considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances

of the judiciary from where the order came, and has concluded that enforcement of the foreign

---

[4] *Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process").  An affected party with a legally protected property interest may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

[4] *See, e.g., In re Restraint of Real Property Located at 2514 Trapside Court, Kissimmee, Florida 34746*, No. 1:15-mc-000539-AK, ECF No. 2 (D.D.C. May 6, 2015); *In re Restraint Of Assets Controlled or Held by or for the Benefit of Brian James O'Brien*, No. 1:12-mc-00530-RCL, ECF No. 4 (D.D.C. Oct. 9, 2012), ECF No. 14 (D.D.C. May 1, 2015); *In re Restraint of the Contents of One Safe Deposit Box*, No. 1:14-mc-00601-KBJ, Doc. 2 (D.D.C. June 23, 2014).

[5] *See* Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, U.S.-U.K., Jan. 6, 1994, S. Treaty Doc. No. 104-2 (1996); *see also* Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union Signed 25 June 2003, as to the Application of the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters Signed 6 January 1994, U.S.-U.K., Dec. 16, 2004, S. Treaty Doc. No. 109-13 (2010) (reaffirming and amending the 1994 bilateral MLAT between the U.S. and the U.K.).

restraining orders, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *See* Ex. 2, p. 1,

AAG Certification and U.K. R.O.  Thus, the second criterion for enforcement is met.

   3. <u>Due Process</u>

  Third, the August 8, 2013, restraining order from the United Kingdom was issued

consistent with due process.  Section 41 of the United Kingdom's Proceeds of Crime Act

("POCA") permits the restraint of assets if any one of the conditions in § 40 of POCA is met.

Here, the condition in § 40(2) is satisfied: a criminal investigation was commenced and there was

reasonable cause to believe the offender has benefitted from his criminal conduct.  Therefore, the

Crown Court may issue a restraining order prohibiting any specified person from dealing with,

disposing of, or diminishing the value of any property held by the defendant, wherever located,

to preserve such property for confiscation.  *See* POCA, § 41 (authorizing restraining orders);

§ 69(2)(b) (the powers of the court must be exercised "with a view to securing that there is no

diminution in the value of realizable property").  CPS obtained a restraining order prohibiting

Ahmed, his family members, and his associated corporate entities from dealing with his listed

assets in the U.K. and elsewhere, and the order specifically names the real property located in the

United States. See Ex. 2, AAG Certification and U.K. R.O., p. 8,

¶ 6(j)-(k), (n)-(o).  The U.K. Order was personally served on Ahmed on August 9, 2013.  Also,

the restraint order was varied by consent on December 18, 2013 to increase the amount of living

expenses, to allow for payment of various debts, and to remove accounts from the restraint

order.  The variation did not affect the assets in the U.S. *See* POCA, § 42 (setting out procedures

for discharge and variation of a § 41 restraining order); Ex. 1, AAG Certification and U.K. R.O.,

p. 31, ¶ 30 ("Anyone affected by this order may apply to the court at any time to vary or

discharge this order . . . .").

4.     Subject Matter Jurisdiction

Fourth, the U. K. authorities have represented that the Maidstone Crown Court is the proper authority to issue the Restraining Order in this matter because POCA empowers only the crown courts to enter such orders, and the Maidstone Crown Court is the local court with jurisdiction over the prosecution, sentencing, and confiscation proceedings concerning Ahmed. Taking into account the presumption of regularity of foreign judicial proceedings and these facts, the fourth criterion for enforcement is met. *See In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d at 42.

5.     Absence of Fraud

Fifth, taking into account the presumption of regularity in foreign proceedings and the facts known to the United States, there is no reason to believe that August 8, 2013, U.K. Restraining Order was obtained by fraud on the part of U.K. authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

**B.     Dual Forfeitability Is Satisfied.**

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement

9

without discussion, and another *declined* to resolve the question of whether dual forfeitability

must be demonstrated by the United States at the restraint phase. *Compare In re Seizure of*

*Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C.

Nov. 9, 2012) (stating that dual forfeitability is required when enforcing a foreign restraining

order and deciding that the United States satisfied the requirement), *with In re Restraint of*

*Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17,

2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that

applies to final orders of forfeiture . . . however, the Court need not resolve the question . . .

because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the

United States acknowledges that dual forfeitability may become relevant if and when the United

Kingdom asks the United States to enforce a confiscation judgment and the United States applies

to enforce such a final judgment.

Here, however, dual forfeitability is satisfied because Ahmed's conduct would be

chargeable under a variety of U.S. criminal laws giving rise to forfeiture, had his fraud been

committed here. Specifically, his conduct could violate the following, non-exhaustive list of

statutes:

    a. 18 U.S.C. § 1343 (wire fraud). Ahmed and his co-conspirators made use of wires in

        foreign commerce to further their scheme to obtain money by false or fraudulent

        pretenses, including by emailing false invoices to "client" companies directing them to

        remit amounts owed to bank accounts maintained by fraudulent businesses Ahmed and

        Hughes controlled. Clients transferred more than $17 million to Ahmed and Hughes

        pursuant to the false invoices. Further, payments received pursuant to the fraudulent

        invoices were made into bank accounts controlled by Ahmed, Hughes, and their

associates, where the amounts owed pursuant to VAT requirements were siphoned off and wired abroad into other accounts controlled by Ahmed and Hughes.

b. 18 U.S.C. § 2314 (interstate or foreign transfer of more than $5,000 knowing the same to have been stolen, converted, or taken by fraud). Over $1.7 million was transferred from accounts controlled by Ahmed and Hughes in the U.K. into bank accounts they controlled with Jykes Bank in Gibraltar; over $1 million was transferred to an account held by Hughes in Dubai; and over $100,000 transferred from a Gibraltar account controlled by Ahmed and Hughes into a Sun Trust account that Ahmed maintained in the United States. U.K. authorities also have identified debit card transactions associated with an account in Gibralter used by Ahmed and Hughes to divert stolen funds. Investigators also identified a withdrawal of $250,000 of funds coming from a foreign bank account, which was used for the purchase of a Florida residence.

c. 18 U.S.C. § 1956(c)(7)(B)(vi) provides that an offense against a foreign nation can be a predicate for money laundering if it is "an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution" if the offender were found in the United States. Ahmed is suspected of conspiracy to cheat the public revenue contrary to U.K. common law and to fraudulently evade tax in violation of the U.K.'s Value Added Tax Act Law of 1994. These offenses likely qualify under a multilateral treaty, the United Nations Convention against Transnational Organized Crime ("UNTOC"), as tax offenses for which the United States would be obligated to extradite a person; thus, they can give rise to a money

11

laundering-based forfeiture under federal law.[6]

The offenses listed above are all authorized for forfeiture and are also authorized for forfeiture when they constitute predicate activity for money laundering.[7]

**C.      This Court Should Act to Enforce the U.K. Restraining Order by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).**

The August 8, 2013, Restraining Order entered by the Manchester Crown Court reflects the intention of the U.K. prosecutor to seek asset forfeiture should the criminal case against Aquil Shabbir Ahmed result in a conviction. Thus, the United States, acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order against the suspect's U.S. assets.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C.

§ 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the U.K. Restraining Order—to "preserve the availability of property . . . subject to forfeiture" for the

---

[6] In *United States v. Real Property Located at 9144 Burnett Road, SE, Yelm, Washington*, 104 F. Supp. 3d 1187 (W.D. Wash. 2015), the court interpreted 18 U.S.C. § 1956(c)(7)(B)(vi). The court denied a motion to dismiss a civil forfeiture complaint and held that setting up an organized criminal group to commit the serious offense of tax evasion, in Romania, was a cognizable foreign predicate, or specified unlawful activity, for the purposes of the U.S. money laundering statutes. Furthermore, the court recognized that money laundering is an extraditable offense under UNTOC, so long as the predicate offense is a serious crime, and the relevant conduct is a criminal offense in both States involved; the Court did not require that the serious crime must be a predicate for money laundering in both States involved. Under UNTOC, an offense is "extraditable" if it is transnational in nature and involves an organized criminal group set up to commit a serious offense. A serious offense is punishable by a maximum of at least four years imprisonment. Fraudulent evasion of tax in the U.K. is punishable by a maximum of seven years. An organized criminal group is defined as a structured group of at least three persons, existing for a period of time and acting in concert with the aim of committing serious crime to obtain a financial or other material benefit. Here, Ahmed conspired with others to defraud clients and U.K. taxing authorities. Finally, the U.K. tax offenses were transnational in nature under UNTOC because they were committed in more than one State (the United Kingdom, Gibraltar, with laundering transactions also occurring in the United States).

[7] *See* 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 and 2314 and bankruptcy fraud violations, e.g. 18 U.S.C. § 152); § 981(a)(1)(A) (civil forfeiture of any property involved in a transaction in violation of the money laundering statutes); § 1956(c)(7)(A) and (B)(vi) (defining specified unlawful activities to include offenses described in items (a)-(d) above); § 982(a)(1) (criminal forfeiture of property involved in money laundering offenses); *see also* 28 U.S.C. § 2461 (modes of recovery for offenses authorizing criminal or civil forfeiture).

duration of the U.K. criminal and confiscation proceedings.  See 28 U.S.C. § 2467(d)(3)(A)

(specifying that the district court may enter a restraining order at any time before or after the

initiation of foreign forfeiture proceedings).  As such, this Court should recognize the

Restraining Order from the Maidstone Crown Court and enforce it by restraining the specified

assets and prohibiting Ahmed, and all others, from affecting the real property in the United

States.  See Ex. 2, AAG Certification and U.K. R.O., p. 8 , ¶ 6(j)-(k), (n)-(o) (ordering the

restraint of real property in the United States).  Should the Court grant this Ex Parte Application,

the United States immediately will serve any resulting order on the affected individuals and

institutions and will record *lis pendens* against the properties set forth herein.

**V.**

**CONCLUSION**

The United States respectfully requests that this Court enforce the attached U.K.

Restraining Order, consistent with U.S. obligations under the relevant treaty, by entering an

order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and

18 U.S.C. § 983(j)(1)(A).  The United States will seek the assistance of the Crown Prosecution

Service in providing notice and a copy of any order issued by this Court to Aquil Shabbir

Ahmed, once the assets are secured.

Respectfully submitted,

M. KENDALL DAY, CHIEF
ASSET FORFEITURE AND MONEY
LAUNDERING SECTION

By: _____
A.J. DE KLUIVER
Deputy Chief
TERESA C. TURNER-JONES
Senior Trial Attorney

U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money
   Laundering Section
1400 New York Avenue NW, 10100
Washington, DC 20530
Telephone:    (202) 514-1263
Email:       Teresa.Turner@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

Exhibit 1
Assistant Attorney General Certification and U.K. Restraining Order (Ahmed)



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

## ASSISTANT ATTORNEY GENERAL DECISION

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii), and the Attorney General's delegation of authority to the Assistant Attorney General for the Criminal Division, Number 2820-2006, I hereby find that it is in the interest of justice to CERTIFY for enforcement the attached order, issued by the Maidstone Crown Court, United Kingdom, in the Matter of Aquil Shabbir Ahmed (Alleged Offender) and in the Matter of the Proceeds of Crime Act of 2002, Case No. U20130264, on August 8, 2013, restraining four real properties in the United States.

_____          5/6/16
Leslie R. Caldwell                                      Date
Assistant Attorney General
Criminal Division

DISOBEDIENCE TO THIS ORDER IS A CONTEMPT OF COURT WHICH IF YOU ARE AN INDIVIDUAL IS PUNISHABLE BY IMPRISONMENT OR IF YOU ARE A BODY CORPORATE IS PUNISHABLE BY SEQUESTRATION OF YOUR ASSETS AND BY IMPRISONMENT OF ANY INDIVIDUAL RESPONSIBLE

IN THE CROWN COURT

SITTING AT MAIDSTONE

Before His Honour Judge MacDonald QC

sitting in Private

No. U2013·0264

Dated 8 August 2013

IN THE MATTER OF AQUIL SHABBIR AHMED

(Defendant)

AND

IN THE MATTER OF THE PROCEEDS OF CRIME ACT 2002

RESTRAINT ORDER PROHIBITING DISPOSAL OF ASSETS

TO:   (1) Mr Aquil Shabbir AHMED (the Defendant)

(2) Mrs Nadra Khanum AHMED (wife of the Defendant)

(3) Julie Ahmed also known as Julie Laban

(4) Farah Ahmed

(5) Kirian Enterprises LIMITED

(6) Fiduciary Trust LIMITED

(7) Massingham Resources LTD (a company controlled by the Defendant)

(8) Snazz Enterprises LTD (Belize) (a company controlled by the Defendant)

1

*I certify that this is a true copy of the original restraint order.*

2 3 SEP 2013

IN THE CROWN COURT AT MAIDSTONE

(9) Keepers Taxation and Accountancy LIMITED (a company controlled by the Defendant)

(10) Keepers Taxation and Accountancy Services LIMITED (a company controlled by the Defendant)

(11) Kent Property Management Services LTD (a company controlled by the Defendant)

(12) Tower Bridge Development LTD (a company controlled by the Defendant)

(13) Medway Properties LTD (a company controlled by the Defendant)

## PENAL NOTICE

If you the Defendant, Mrs Nadra Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED, Massingham Resources LIMITED, Snazz Enterprises LIMITED (Belize), Keepers Taxation and Accountancy LIMITED, Keepers Taxation and Accountancy Services LIMITED, Kent Property Management Services LTD, Tower Bridge Developments LTD and Medway Properties LTD disobey this Order you may be held to be in contempt of court and may be imprisoned, fined or have your assets seized.

Any other person who knows of this order and does anything which helps or permits the Defendant, Mrs Nadra Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED, Massingham Resources LIMITED, Snazz Enterprises LIMITED (Belize), Keepers Taxation and Accountancy LIMITED, Keepers Taxation and Accountancy Services LIMITED, Kent Property Management Services LIMITED, Tower Bridge Developments LTD and/or Medway Properties LTD to breach the terms of this Order may also be held to be in contempt of court and may be imprisoned, fined or have their assets seized.

2

IMPORTANT: NOTICE TO THE DEFENDANT, MRS Nadra Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED, Massingham Resources LIMITED, Snazz Enterprises LIMITED (Belize), Keepers Taxation and Accountancy LIMITED, Keepers Taxation and Accountancy Services LIMITED, Kent Property Management Services LIMITED, Tower Bridge Developments LTD and Medway Properties LTD

This order prohibits you the Defendant, from dealing with your assets. It prohibits Mrs Nadra Khanum AHMED from dealing with the assets identified in paragraph 8 of this Order. It prohibits Julie Ahmed also known as Julie Laban from dealing with the assets at paragraph 9 of this Order. It prohibits Farah Ahmed from dealing with the assets at paragraph 10 of this order. It prohibits Kirian Enterprises LIMITED from dealing with the assets in paragraph 11. It prohibits Fiduciary Trust LIMITED from dealing with the assets in paragraph 12. It prohibits Keepers Taxation and Accountancy Services LIMITED from dealing with the assets identified in paragraph 13 of this order. It prohibits Kent Property Management Services LIMITED from dealing with the assets identified in paragraph 14 of this order. It prohibits Tower Bridge Development LTD from dealing with the assets identified in paragraph 15 of this order. It prohibits Medway Properties LTD from dealing with the assets identified in paragraph 16 of this order. It prohibits Massingham Resources LIMITED from dealing with assets identified in paragraph 17 of this order. It prohibits Snazz Enterprises LIMITED (Belize) from dealing with assets identified in paragraph 18 of this order. It prohibits Keepers Taxation and Accountancy LIMITED from dealing with the assets identified in paragraph 19 of this order.

The order is subject to the exceptions contained in the order. You should read it all carefully.

3

You are advised to consult a solicitor as soon as possible. Under paragraph 40 of schedule 1 of the Legal Aid, Punishment and Sentencing of Offenders Act 2012, you may be entitled to Community Legal Service Funding in respect of this Order. Your solicitor will be able to provide you with the appropriate forms. You should contact the Special Case Unit, Legal Aid Agency, 6th Floor, 102 Petty France, London, SW1H 9JA, DX 161440 Westminster 8, who will be able to advise you as to any public funding available. In relation to civil funding general enquiries may be directed to the Legal Aid Agency telephone helpline: 0845 345 4345.

If you are a defendant in criminal proceedings to which this Order is ancillary and you have the benefit of a Representation Order then your solicitor may be able to give you advice and assistance within the scope of that Representation Order.

You have a right to ask this court to vary or discharge this order, see paragraph 30 below. If you wish to do this you must serve the application and the witness statement in support of the application on the Crown Prosecution Service and the Defendant, Mrs Nadra Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED , Massingham Resources LIMITED, Snazz Enterprises LIMITED, Keepers Taxation and Accountancy LIMITED, Keepers Taxation and Accountancy Services LIMITED, Kent Property Management Services LIMITED, Tower Bridge Developments LTD and Medway Properties LTD at least two clear working days before the date fixed by the Crown Court for the hearing of the application.

There is an interpretation section at paragraphs 42 and 43 of this order.

4

# THE ORDER

1.  This is a Restraint Order made against Mr Aquil Shabbir AHMED
    ("the Defendant"), Mrs Nadra Khanum AHMED, Julie Ahmed also
    known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED,
    Fiduciary Trust LIMITED, Massingham Resources LIMITED,
    Snazz Enterprises LIMITED, Keepers Taxation and Accountancy
    LIMITED, Keepers Taxation and Accountancy Services LIMITED,
    Kent Property Management Services LIMITED, Tower Bridge
    Developments LTD and/or Medway Properties LTD on 8 August
    2013 by His Honour Judge MacDonald QC on the application of
    the Crown Prosecution Service ("the Prosecutor"). The Judge read
    the witness statement listed in Schedule A and accepted the
    undertakings set out in Schedule B at the end of this order.

2.  This order was made without notice to the Defendant, Mrs Nadra
    Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah
    Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED,
    Massingham Resources LIMITED, Snazz Enterprises LIMITED,
    Keepers Taxation and Accountancy LIMITED, Keepers Taxation
    and Accountancy Services LIMITED, Kent Property Management
    Services LIMITED, Tower Bridge Developments LTD and/or
    Medway Properties LTD. The Defendant, Mrs Nadra Khanum
    AHMED, Julie Ahmed also known as Julie Laban , Farah Ahmed,
    Kirian Enterprises LIMITED, Fiduciary Trust LIMITED,
    Massingham Resources LIMITED, Snazz Enterprises LIMITED,
    Keepers Taxation and Accountancy LIMITED, Keepers Taxation
    and Accountancy Services LIMITED, Kent Property Management
    Services LIMITED, Tower Bridge Developments LTD and/or
    Medway Properties LTD have a right to apply to the court to vary
    or discharge the order - see paragraph 30 below.

5

3.   There will be a further hearing of this matter on 48 hours notice should either Defendant and/or any other person affected by this order apply because they object to the continuation of this order or seek it to be varied. Otherwise this order shall remain in full force until the conclusion of the criminal proceedings against each defendant which continue until any confiscation order is paid in full.

**DISPOSAL OF OR DEALING WITH ASSETS**

4.   The Defendant must not:-

   (1)   remove from England and Wales any of his assets which are in England and Wales; or

   (2)   in any way dispose of, deal with or diminish the value of any of his assets whether they are in or outside England and Wales.

5.   Paragraph 4 applies to all the Defendant's assets whether or not the assets are described in this order or are transferred to the Defendant after the order is made, are in his own name and whether they are solely or jointly owned. For the purpose of this order the Defendant's assets include any asset which he has the power, directly or indirectly, to dispose of or deal with as if it were his own. The Defendant is to be regarded as having such power if a third party holds or controls the asset in accordance with his direct or indirect instructions.

6.   This prohibition includes the following assets in particular:-

   (a)   the property known as 77 Dover Road, Canterbury, CT1 3DZ, title number TT4261 registered in the name of Kent

6

Property Management Services LIMITED or the net sale money after payment of any mortgages if it has been sold;

(b)  the property known as 18 Lebanon Gardens, London, SW18 1RG, title number 328108 registered in the name of Aquil Shabbir Ahmed or the net sale money after payment of any mortgage is it has been sold;

(c)  the property known as 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, ME2 4FX, title number K879306 registered in the name of Aquil Ahmed or the net sale money after payment of any mortgage if it has been sold;

(d)  the property known as 49 Luton Road, Chatham, Kent, ME4 5AG , title number K400716 registered in the name of Aquil Ahmed or the net sale money after payment of any mortgage if it has been sold;

(e)  the property known as 1 Kent Close, Orpington, Kent, BR6 7HD, title number SGL715993 registered in the name of Kent Property Management Services or the net sale money after payment of any mortgage if it has been sold;

(f)  the property known as 106 Dickinson Drive, Walsall, WS2 9DP, title number WM208528 registered in the name of Aquil Ahmed and Julie Ahmed or the net sale money after payment of any mortgage if it has been sold;

(g)  the property known as Flat 3, 11 Royal Parade, 2-7 Elmdale Road, Bristol, BS8 1SZ, title number BL77481 registered in the name of Aquil Ahmed and Farah Ahmed

7

or the net sale money after payment of any mortgage if it
has been sold;

(h)    the property known as 4 Whitchurch Road, Manchester,
M20 1FX, title number LA24133 registered in the name of
Aquil Shabbir Ahmed or the net sale money after payment
of any mortgage if it has been sold;

(i)    the property known as Flat 2, Malling Place, St Leonard's
Street, West Malling, Kent, ME19 6PD, title number
K945956 registered in the name of Aquil Shabbir Ahmed or
the net sale money after payment of any mortgage if it has
been sold;

(j)    the property known as 4728 Windwood Drive, Kissimmee,
Orlando, Florida;

(k)    the property known as 16931 Sunrise Vista Drive,
Clermont, Florida;

(l)    the property known as B1 & B2 Bluewater Bay, Bodrum,
Turkey;

(m)    the property known as Astrum Towers, Istanbul, Turkey;

(n)    the property known as 806 Golf Course Parkway, Polk
County, Florida;

(o)    the property known as Hilton Grand Vacation Club, Parc
Soleil Resort, Florida;

8

(p)     the assets of a company called Massingham Resources LIMITED company number 103482, registered address 41/42 Victoria house, Main Street, Gibraltar;

(q)     the assets of a company called Snazz Enterprises LIMITED company number 79,613, registered address 60 Market Square, Po box 364 Belize City, Belize;

(r)     the assets of a company called Keepers Taxation and Accountancy LIMITED company number 04525255, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(s)     the assets of a company called Keepers Taxation and Accountancy Services LIMITED company number 06692490, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(t)     the assets of a company called Kent Property Management Services LIMITED company number 06818748, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(u)     the assets of a company called Tower Bridge Development LTD company number 05837649 , registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(v)     the assets of a company called Medway Properties LTD company number 05749553, registered address Suite 1,

Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(w)  The assets of a company called Continental Services Personnel LIMITED, dissolved.

(x)  The assets of a company called LAT Developments Personnel LIMITED , dissolved.

(y)  the shares held by the defendant as beneficiary in the company called Massingham Resources LIMITED company number 103482, registered address : 41/42 Victoria house, Main Street, Gibraltar;

(z)  the shares held by the defendant in the company called Snazz Enterprises LIMITED company number 79,613, registered address 60 Market Square, Po box 364 Belize City, Belize;

(aa)  the shares held by the defendant in the company called Snazz Enterprises LIMITED company number 07695100 registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(bb)  the shares held by the defendant in the company called Kent Property Management Services LIMITED company number 06818748, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX

(cc)  the shares held by the defendant in the company called Tower Bridge Development LTD company number

05837649 , registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(dd)   the shares held by the defendant in the company called Kirian Enterprises LIMITED company number 76,917 , registered address registered address 60 Market Square, Po box 364 Belize City, Belize;

(ee)   the shares held by the defendant in the company called Medway Properties LTD company number 05749553, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(ff)   the shares held by the Defendant in the company called MSC Accountancy LTD company number 07315265, registered address 96B South End, Croydon, CR0 1DQ;

(gg)   the shares held by the Defendant in the company called KLF Debt Management LTD company number 06606152 , registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(hh)   the shares held by the Defendant in the company called KATS Accountants LTD company number 07240063 registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(ii)   any money in the account numbered 53203409 20 25 42 held at Barclays Bank Plc, Ground Floor, Swift House, PO

11

Box 120, Longwood Close, Westwood Business Park, Coventry, CV4 8JN in the name of Aquil Shabbir Ahmed;

(jj)    any money in the account numbered 70798770 20 54 11 at Barclays Bank Plc, Ground Floor, Swift House, PO Box 120, Longwood Close, Westwood Business Park, Coventry, CV4 8JN held in the name of Aquil Shabbir Ahmed;

(kk)    any money in the account numbered 73630145 20 45 11 at Barclays Bank Plc, Ground Floor, Swift House, PO Box 120, Longwood Close, Westwood Business Park, Coventry, CV4 8JN held in the name of Keepers Legal LLP Clients Account;

(ll)    any money in the account numbered 63871380 20 54 11 at Barclays Bank Plc, Ground Floor, Swift House, PO Box 120, Longwood Close, Westwood Business Park, Coventry, CV4 8JN held in the name of ASA Associates;

(mm)    any money in the account numbered 28001680 60 08 23 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the name of Mr Aquil S Ahmed;

(nn)    any money in the account numbered 11532645 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the name of Ahmed;

(oo)    any money in the account numbered 00874222 309537 at Lloyds TSB Bank Plc, 2 Brindley Place, Birmingham, B1 2AB held in the names of Mr AS and Mrs N Ahmed;

12

(pp)   any money in the account numbered 07652756 309537 at Lloyds TSB Bank Plc, 2 Brindley Place, Birmingham, B1 2AB held in the names of Mr and Mrs N Ahmed;

(qq)   Any money in the account numbered 01835270 40-31-06 at HSBC Bank Plc, Level 4 62-76 Park Street, London, SE1 9DZ held in the name of Mr Aquil Ahmed;

(rr)   Any money in the account numbered 51320165 40-31-06 at HSBC Bank Plc, Level 4 62-76 Park Street, London, SE1 9DZ held in the name of Mr Aquil Shabbir Ahmed;

(ss)   Any money in the account numbered 11843710 40-31-06 at HSBC Bank Plc , Level 4 62-76 Park Street, London, SE1 9DZ held in the name of Mr Aquil Ahmed;

(tt)   Any money in the account numbered 11580607 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP, held in the names of Kent Property Management Services LTD and Nadra Ahmed;

(uu)   Any money in the account numbered 11582359 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the name of Tower Bridge Developments LTD;

(vv)   Any money in the account numbered 11534591 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the names of Medway Properties LTD and David Hughes;

(ww)   Any money in the account   numbered 02966285.0001 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name Aquil Ahmed;

(xx)   Any money in the account numbered 0316943.0002 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Massingham Resources LIMITED;

(yy)   Any money in the account   numbered 0293886.0001 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED;

(zz)   Any money in the account numbered 0293886.0002 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED.

(aaa)  A vehicle Ford Mustang GT registration number B16BKY registered in the name of Aquil Ahmed;

(bbb)  A vehicle Cadillac Escalade registration number X14ASA registered in the name of Aquil Ahmed;

(ccc)  A vehicle Bentley Continental registration number 350AA registered in the name of Aquil Ahmed;

(ddd)  A vehicle BMW 535i registration number C171 WLB registered in the name of Aquil Ahmed;

(eee)  A vehicle BMW635 csi coupe registration number D793BGM registered in the name of Aquil Ahmed;

14

(fff)   A vehicle BMW M3 Coupe registration number E428CGN registered in the name of Aquil Ahmed;

(ggg)   A vehicle BMW 2002 Cabriolet registration number KKK194N registered in the name of Aquil Ahmed;

(hhh)   A vehicle BMW 2002 TI registration number MLE346P registered in the name of Aquil Ahmed;

(iii)   A vehicle BMW M3 Coupe registration number M357FNW registered in the name of Aquil Ahmed;

(jjj)   A vehicle BMW 3.0 SI registration number TLN156M registered in the name of Aquil Ahmed;

(kkk)   A vehicle BMW M Coupe registration number V612KGX registered in the name of Aquil Ahmed;

(lll)   Cherished Transfer number plate B16BKY registered in the name of Aquil Ahmed;

(mmm)   Cherished Transfer number plate X14ASA registered in the name of Aquil Ahmed;

(nnn)   Cherished Transfer number plate 350AA registered in the name of Aquil Ahmed;

(ooo)   Cherished Transfer number plate D793BGM registered in the name of Aquil Ahmed;

(ppp)   Cherished Transfer number plate E4TVW registered in the name of Aquil Ahmed;

(qqq)   Cherished Transfer number plate KKK194N registered in the name of Aquil Ahmed;

(rrr)   Cherished Transfer number plate M357FNW registered in the name of Aquil Ahmed;

(sss)   Cherished Transfer number plate TLN156M registered in the name of Aquil Ahmed;

(ttt)   Cherished Transfer number plate V612KGX registered in the name of Aquil Ahmed;

(uuu)   Cherished Transfer number plate TJI26 registered in the name of Aquil Ahmed;

**AND IT IS ORDERED THAT:-**

7.   The assets of:

(a)   Continental Trade Personnel LIMITED (dissolved)

(b)   LAT Development Personnel LIMITED (dissolved)

(c)   Massingham Resources LIMITED;

(d)   Snazz Enterprises LIMITED (Belize);

(e)   Keepers Taxation and Accountancy LIMITED;

(f)   Keepers Taxation and Accountancy Services LIMITED;

(g)   Kent Property Management Services LTD;

(h)   Tower Bridge Development LTD;

(i)   Medway Properties LTD;

be treated as the personal assets of the Defendant.

8.   Mrs Nadra Khanum Ahmed must not:-

(1)   remove from England and Wales or

(2)   in any way dispose of or deal with or diminish the value of the following assets -

    (a)   any money in the account numbered 00874222 309537 at Lloyds TSB Bank Plc 2 Brindley Place, Birmingham, B1 2AB held in the names of Mr AS and Mrs N Ahmed;

    (b)   any money in the account numbered 07652756 309537 at Lloyds TSB Bank Plc 2 Brindley Place, Birmingham, B1 2AB held in the names of Mr and Mrs N Ahmed;

    (c)   Any money in the account numbered 11580607 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the names of Kent Property Management Services LTD and Nadra Ahmed.

    (d)   Any money in the account numbered 0293886.0001 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED.

    (e)   Any money in the account numbered 0293886.0002 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED.

9.   Julie Ahmed also known as Julie Laban must not:-

      (1)    remove from England and Wales or

      (2)    in any way dispose of or deal with or diminish the value of the following asset –

           (a)    the property known as 106 Dickinson Drive, Walsall, WS2 9DP, title number WM208528 registered in the name of Aquil   Ahmed and Julie Laban or the net sale money after payment of  any mortgage if it has been sold.

10.    Farah Ahmed must not:-

      (1)    remove from England and Wales or

      (2)    in any way dispose of or deal with or diminish the value of the following asset:-

           (a)    the property known as Flat 3, 11 Royal Parade, 2-7 Elmdale Road, Bristol, BS8 1SZ, title number BL77481 registered in the name of Aquil Ahmed and Farah Ahmed or the net sale     money     after payment of any mortgage if it has been sold.

11.    Kirian Enterprises LIMITED a company under the control of the Defendant must not: –

      (1)    remove from England or Wales or

      (2)    in any way dispose of or deal with or diminish the value of the following assets:-

(a) ~~The assets of the company called Kirian Enterprises LIMITED, company number 78,917, registered address 60 Market Square, PO Box 364, Belize City, Belize;~~

*CAM QC*

(b) Shares in a company called Massingham Resources LIMITED company number 103482, registered at 41/42 Victoria House, Main Street, Gibraltar.

12. Fiduciary Trust LIMITED, ~~a company under the control of the Defendant~~ must not:-

*CAM QC*

(1) remove from England or Wales or

(2) in any way dispose of or deal with or diminish the value of the following assets -

(a) ~~The assets of the company called Fiduciary Trust LIMITED, company number 9162 registered at 3 Bell Lane, Gibraltar;~~

*CAM QC*

(b) Shares in a company called Snazz Enterprises LIMITED company number 79,613 registered address 60 Market Square, PO Box, 364, Belize City, Belize.

13. Keepers Taxation and Accountancy Services LIMITED a company in the control of the Defendant must not:-

(1) Remove from England and Wales or

(2) In any way dispose of or deal with or diminish the value of the following assets –

19

    (a)    The assets of the company called Keepers Taxation and Accountancy Services LIMITED company number 06692490, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX.

14.    Kent Property Management Services LTD a company in the control of the Defendant must not:-

(1)    Remove from England and Wales or

(2)    In any way dispose of or deal with or diminish the value of the following assets:-

    (a)    The assets of the company called Kent Property Management Services LTD company number 06818748, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

    (b)    the property known as 77 Dover Road, Canterbury, CT1 3DZ, title number TT4261 registered in the name of Kent Property Management Services LTD or the net sale money after payment of any mortgages if it has been sold;

    (c)    the property known as 1 Kent Close, Orpington, Kent, BR6 7HD, title number SGL715993 registered in the name of Kent Property Management Services or the net sale money after payment of any mortgage if it has been sold;

20

(d)   Any money in the account numbered 11580607 60 17 36 at National Westminster Bank Plc, RBS Litigations, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the names of Kent Property Management Services LTD and Nadra Ahmed.

15.   Tower Bridge Development LTD a company in the control of the Defendant must not:-

(1)   Remove from England and Wales or

(2)   in any way dispose of or deal with or diminish the value of the following assets –

(a)   The assets of the company called Tower Bridge Development LTD company number 05837649 , registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(b)   any money in the account numbered 11582359 60 17 36 at National Westminster Bank Plc, RBS Litigations, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the name of Tower Bridge Developments LTD.

16.   Medway Properties LTD a company in the control of the Defendant must not:-

(1).   Remove from England and Wales or

(2)   In any way dispose of or deal with or diminish the value of the following assets –

21

(a)    The assets of the company called Medway Properties LTD company number 05749553, registered address Suite 1, Christchurch House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX;

(b)    Any money in the account numbered 11534591 60 17 36 at National Westminster Bank Plc, RBS Litigations, 2nd Floor, 1 Princes Street, London EC2R 8BP held in the names of Medway Properties LTD and David Hughes.

17.    Massingham Resources LIMITED (a company in the Control of the Defendant) must not:-

(1)    remove from England and Wales or

(2)    in any way dispose of or deal with or diminish the value of the following assets –

(a)    The assets of the company called Massingham Resources LIMITED company number 103482, registered address 41/42 Victoria house, Main Street, Gibraltar;

(b)    Any money in the account numbered 0316943.0002 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Massingham Resources Limited

18.    Snazz Enterprises LIMITED (Belize) (a company under the control of the Defendant) must not:-

22

(1)   remove from England and Wales or

(2)   in any way dispose of or deal with or diminish the value of the following assets -

    (a)   The assets of the company called Snazz Enterprises LIMITED company number 79,613, registered address 60 Market Square, Po box 364 Belize City, Belize;

    (b)   Any money in the account numbered 0293886.0001 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED;

    (c)   Any money in the account numbered 0293886.0002 at Jyske Bank (Gibraltar) LTD, 76 Main Street, Gibraltar, P.O Box 143 held in the name of Snazz Enterprises LIMITED.

19.   Keepers Taxation and Accountancy LIMITED (a company under the control of the Defendant) must not:-

(1)   remove from England and Wales or

(2)   in any way dispose of or deal with or diminish the value of the following assets —

    (a)   The assets of the company called Keepers Taxation and Accountancy LIMITED company number 04525255, registered address Suite 1, Christchurch

23

House, Beaufort Court, Sir Thomas Longley Road, Rochester, Kent, ME2 4FX.

20.   Any rent received by the Defendant in respect of the properties set out in paragraph 6 (a) to (o) above shall be dealt with in the following manner:-

   (a)   the tenant shall pay rent to the Defendant in the form of a cheque, standing order or other inter bank transfer;

   (b)   the Defendant shall pay the cheque or other payment into bank account number numbered 11532645 60 17 36 at Royal Bank of Scotland Plc, 2nd Floor, 1 Princes Street in the name of Ahmed ("the account");

   (c)   the sums received shall be used by the Defendant each and every month to pay mortgage instalments upon the properties set out in paragraph 6 (a) to (o) in such amounts as the mortgagees shall require; and any surplus held in the account or accounts shall be held restrained in the account subject to this order.

21.   The Defendant shall keep records of rent received and sums paid to the mortgagees, such records to include:-

   (a)   the name and address of the tenant from whom each sum is received and the date of receipt;

   (b)   the amount paid to the mortgagee and the date of the payment;

24

(c)   bank statements of the account or accounts into which rents are received and from which mortgage instalments are made

AND the Defendant shall supply to the Prosecutor each and every calendar month within 14 days after the end of the month a copy of the said records relating to that month.

## PROVISION OF INFORMATION

22.   The Defendant must serve a witness statement certified by a statement of truth on the Prosecutor within 28 days after this order has been served on him setting out all his assets and all assets under his control whether in or outside England and Wales and whether in his own name or not and whether solely or jointly owned, giving the value, location and details of all such assets. The witness statement must include:

(1)   the name and address of all persons including financial institutions holding any such assets;

(2)   if the Defendant alleges that any third party or financial institution holds an interest in any such asset then he must identify the nature and extent of that interest, and the name and address of the person who is alleged to hold it;

(3)   details of the Defendant's current salary or other form of income, identifying the amounts paid, by whom they are paid and the account or accounts into which such sums are paid;

(4)   the names and numbers of all accounts held by or under the control of the Defendant, together with the name and

address of the place where the account is held and the sums in the account;

(5)     details (including addresses) of any real property in which the Defendant has any interest, including an interest in any of the net sale money if the property were to be sold. These details must include details of any mortgage or charge on the property;

(6)     details of all National Savings Certificates, unit trusts, shares or debentures in any company or corporation, wherever incorporated in the world, owned or controlled by the Defendant or in which he has an interest;

(7)     details of all trusts of which the Defendant is a beneficiary, including the name and address of every trustee;

(8)     particulars of any income or debt due to the Defendant including the name and address of the debtor;

(9)     details of all assets over £1,000 in value received by the Defendant, or anyone on his behalf, since 17th November 2005 identifying the name and address of all persons from whom such property was received;

(10)    details of all assets over £1,000 in value transferred by the Defendant, or anyone on his behalf, to others since 17th November 2005 identifying the name and address of all persons to whom such property was transferred; and

(11)    In the event that any Claim Form, Petition, Statutory Demand, Application Notice, Enforcement Notice, Seizure Notice or other civil court process is pending or is at any

26

time during the currency of this order served upon him or brought to his attention, the Defendant shall forthwith provide a copy of the process to the Prosecutor.

23.    (1)    Subject to any further order of the court any information given in compliance with this order shall only be used:-

      (a)    for the purpose of these proceedings;

      (b)    if the Defendant is convicted, for the purposes of any confiscation hearing that may take place; and

      (c)    if a confiscation order is made, for the purposes of enforcing that order, including any receivership proceedings.

    (2)    Paragraph 23(1) does not prevent the Prosecutor or counsel instructed by the Prosecutor from considering any information disclosed in compliance with this order for the purposes of discharging the Prosecutor's disclosure obligations in the criminal proceedings (to which these proceedings are ancillary) whether under the Criminal Procedure and Investigations Act 1996 or the common law.

    (3)    There shall be no disclosure of any material disclosed in compliance with this order to any co-defendant in the criminal proceedings.

    (4)    However, nothing in this paragraph shall make inadmissible any disclosure made by the Defendant in any proceedings for perjury relating to that disclosure.

**ADDITIONAL PROVISION OF INFORMATION –**

24.    The Defendant must serve a witness statement certified by a statement of truth upon the Prosecutor within 28 days after this order has been served on him setting out the following matters:-

    (1)    the name and address of every tenant in the properties referred to in paragraphs 6 (a) to (o) above; and

    (2)    the amount of rent paid by each tenant, details of any arrears of such rent and the manner in which the rent is usually paid.

25.    (1)    Subject to any further order of the court any information given in compliance with this order shall only be used:-

        (a)    for the purpose of these proceedings;

        (b)    if the Defendant is convicted, for the purposes of any confiscation hearing that may take place; and

        (c)    if a confiscation order is made, for the purposes of enforcing that order, including any receivership proceedings.

    (2)    Paragraph 25(1) does not prevent the Prosecutor or counsel instructed by the Prosecutor from considering any information disclosed in compliance with this order for the purposes of discharging the Prosecutor's disclosure obligations in the criminal proceedings (to which these proceedings are ancillary) whether under the Criminal Procedure and Investigations Act 1996 or the common law.

28

(3)   There shall be no disclosure of any material disclosed in compliance with this order to any co-defendant in the criminal proceedings.

(4)   However, nothing in this paragraph shall make inadmissible any disclosure made by the Defendant in any proceedings for perjury relating to that disclosure.

## REPATRIATION

26.   (1)   The Defendant must within 21 days after being asked to do so in writing by the Prosecutor bring any moveable asset in respect of which he has an interest, which is outside England and Wales, to a location within England and Wales.

(2)   The Defendant must inform the Prosecutor of the location within England and Wales within 7 days of the arrival of the assets.

(3)   If the asset is cash or credit in a financial institution it must be paid into an interest bearing account and the account holder, location and account number be notified to the Prosecutor within 7 days.

## SERVICE OUT OF JURISDICTION

27.   The Prosecutor shall have permission to serve this order and the witness statement of Michael Gleave listed in Schedule A and any further orders or applications or other paperwork relating to this claim by serving the same on Massingham Resources Limited by post to 41/42 Victoria house, Main Street, Gibraltar, on Kirian Enterprises Limited by post to 60 Market Square, Po box

29

364 Belize City, Belize, on Fiduciary Trust Limited by post to 3 Bell Lane, Gibraltar and on Snazz Enterprises Limited by post to 60 Market Square, PO Box 364, Belize City, Belize.

28.    The service referred to in paragraph 27 above shall be considered to be good and sufficient service upon the companies on the seventh day after posting.

### EXCEPTIONS TO THIS ORDER

29.    (1)    This order does not prohibit the Defendant and Mrs Nadra Khanum Ahmed, on the proviso that they are not in prison, from spending up to £250 a week towards their ordinary living expenses, up to the date of the making of any confiscation order. Before starting to withdraw money in respect of their living expenses, the Defendant and Mrs Nadra Khanum Ahmed must contact the Prosecutor to nominate a bank account or source of income from which such monies will be drawn and must obtain the consent of the Prosecutor in writing to the use of that account or income for that purpose.

    (2)    This order does not prohibit the Defendant and/or Mrs Nadra Khanum Ahmed from spending any money either may receive by way of state benefit from the Department for Work and Pensions and/or Her Majesty Revenue and Customs.

    (3)    This order does not prohibit the Defendant from spending towards his ordinary living expenses any sum earned by him whilst he is in prison.

30

(4)   The Defendant and Mrs Nadra Khanum may agree with the Prosecutor that the above spending limit be varied or that this Order be varied in any other respect, but any such agreement must be in writing.

(5)   This order does not prevent:-

(a)   any person from paying any money in satisfaction of the whole or part of any confiscation order which may be made against the Defendant; or

(b)   the levy of distress upon any goods subject to this order for the purpose of enforcement of any confiscation order which may be made against the Defendant.

## VARIATION OR DISCHARGE OF THIS ORDER

30.   Anyone affected by this order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must serve the application and the witness statement in support of the application on the Prosecutor and the Defendant, Mrs Nadra Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah Ahmed, Kirian Enterprises Limited, Fiduciary Trust Limited ,Massingham Resources LIMITED, Snazz Enterprises LIMITED, Keepers Taxation and Accountancy LIMITED, Keepers Taxation and Accountancy Services LIMITED, Kent Property Management Services LTD, Tower Bridge Developments LTD and Medway Properties LTD at least two clear working days before the date fixed by the Crown Court for the hearing of the application.

31

## EFFECT OF THIS ORDER

31.    A person who is an individual who is ordered not to do something must not do it himself or in any other way. He must not do it through others acting on his behalf or on his instructions or with his encouragement.

32.    A person who is not an individual which is ordered not to do something must not do it itself or by its directors, officers, partners, employees or agents or in any other way.

## PARTIES OTHER THAN THE DEFENDANT

**Effect of this order**
33.    It is a contempt of court for any person notified of this order knowingly to assist in or permit a breach of this order. Any person doing so may be imprisoned or fined. He is also at risk of prosecution for a money laundering offence.

**Set off by banks**
34.    This order does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the Defendant before it was notified of this order.

**Withdrawals by the Defendant**
35.    No bank need enquire as to the application or proposed application of any money withdrawn by the Defendant if the withdrawal appears to be permitted by this order.

**Existing Charges**
36.    This order does not prevent any financial institution or other charge holder from enforcing or taking any other steps to enforce an existing charge it has in respect of a property or properties so secured, providing that the said financial institution gives written

32

notice to the defendant, the Prosecutor and any other affected third party no later than 21 days before any such application is made. If any evidence is to be relied upon in support of any such application, the substance of it must be communicated to the Prosecutor in advance.

**Persons outside England, Wales, Scotland and Northern Ireland**

37.   (1)   Except as provided in paragraph (2) below, the terms of this order do not affect or concern anyone outside the jurisdiction of this court, Scotland or Northern Ireland.

(2)   The terms of this order will affect the following persons in a country or state outside the jurisdiction of this court, Scotland or Northern Ireland:-

(a)   a person to whom this order is addressed or the officer or agent appointed by power of attorney of such a person;

(b)   any person who:-

(i)   is subject to the jurisdiction of this court, Scotland or Northern Ireland;

(ii)   has been given written notice of this order at his residence or place of business within the jurisdiction of this court, Scotland or Northern Ireland; and

(iii)   is able to prevent acts or omissions outside the jurisdiction of this court, Scotland or Northern Ireland which constitute or assist in a breach of the terms of this order; and

33

(c)     any other person, only to the extent that this order is declared enforceable by or is enforced by a court in that country or state.

**Enforcement in Scotland and Northern Ireland**

38.     This order shall have effect in the law of Scotland and Northern Ireland, and may be enforced there, if it is registered under the Proceeds of Crime Act 2002 (Enforcement in Different Parts of the United Kingdom) Order 2002.

**Assets located outside England and Wales**

39.     Nothing in this order shall, in respect of assets located outside England and Wales, prevent any third party from complying with-

(1)     what it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract to which it is a party; and

(2)     any orders of the courts of that country or state, provided that reasonable notice of any application for such an order is given to the Prosecutor;

unless those assets are situated in Scotland or Northern Ireland, in which case this order must be obeyed there.

**UNDERTAKINGS**

40.     The Prosecutor gives to the court the undertakings set out in Schedule B to this order.

**DURATION OF THE ORDER**

41.     This order will remain in force until it is varied or discharged by a further order of this court.

34

**INTERPRETATION**
42.    Reference to the "Defendant" means Mr Aquil Shabbir Ahmed. Reference to an asset belonging to the Defendant includes any property in which the Defendant has an interest and any property to which the Defendant has a right.

43.    A period of time expressed as a number of days shall be computed as clear days as defined in rule 57.2 of the Criminal Procedure Rules 2012.

**COSTS**
44.    The costs of this order are reserved.

**COMMUNICATIONS WITH THE COURT**
All communications to the court about this order should be sent to the Crown Court, The Law Courts, Barker Road, Maidstone, Kent, ME16 8EQ quoting the case number. The office is open between 9am and 5pm Monday to Friday. The telephone number is 01622 202000.

**ADDRESS OF THE PROSECUTOR FOR SERVICE AND ANY COMMUNICATION IN RESPECT OF THESE PROCEEDINGS**
All communications to the Prosecutor about this order should be sent to the Crown Prosecution Service, Proceeds of Crime Unit, Rose Court, 2, Southwark Bridge, London SE1 9HS. Telephone number 020 3357 0337 quoting the Defendant's name. The CPS is open between 9am and 5pm Monday to Friday.

COURT STAMP

CROWN COURT AT

0 8 AUG 2013

35

Charles Macdonald QC

Judge

08/08/13

SCHEDULE A

WITNESS STATEMENTS
(1)    Witness Statement of Michael Gleave dated 31st July 2013.

SCHEDULE B

UNDERTAKINGS GIVEN TO THE COURT BY THE PROSECUTOR
(1)    The Prosecutor will serve upon the Defendant, Mrs Nadra
        Khanum AHMED, Julie Ahmed also known as Julie Laban, Farah
        Ahmed, Kirian Enterprises LIMITED, Fiduciary Trust LIMITED,
        Massingham Resources LIMITED, Snazz Enterprises LIMITED
        (Belize), Keepers Taxation and Accountancy LIMITED, Keepers
        Taxation and Accountancy Services LIMITED, Kent Property
        Management Services LTD, Tower Bridge Developments LTD and
        Medway Properties LTD:-

        (a)    a copy of this order; and
        (b)    a copy of the witness statement containing the evidence
                relied upon by the Prosecutor, and any other documents
                provided to the court on the making of the application.

(2)    Anyone notified of this order will be given a copy of it by the
        Prosecutor.

(3)    The Prosecutor will pay the reasonable costs of anyone other than
        the Defendant, Mrs Nadra Khanum AHMED, Julie Ahmed also
        known as Julie Laban, Farah Ahmed, Kirian Enterprises LIMITED,
        Fiduciary Trust LIMITED, Massingham Resources LIMITED,
        Snazz Enterprises LIMITED (Belize), Keepers Taxation and
        Accountancy LIMITED, Keepers Taxation and Accountancy
        Services LIMITED, Kent Property Management Services LTD,
        Tower Bridge Developments LTD and/or Medway Properties LTD

36

which are incurred as a result of this order including the costs of finding out whether that person holds any of the Defendant's assets, save that the Prosecutor will not without an order of the court be obliged to pay any legal or accountancy costs so incurred unless the Prosecutor first gives its consent in writing.

37

# ANNEX C